## IN THE CIRCUIT COURT FOR WILSON COUNTY, TENNESSEE

BEVERLY JENNETT,         )
)
)
    Plaintiff,           )
)
v.                      )
)
THE TRAVELERS INDEMNITY   )
COMPANY OF AMERICA,      )
)
)
    Defendant.          )
)

**JURY DEMAND**

2014CV 252

Case No.

FILED

A.M.   MAY 16 2014   P.M.

LINDA NEAL, CIRCUIT COURT CLERK
WILSON COUNTY, TN

### COMPLAINT

Plaintiff, BEVERLY JENNETT, for her Complaint against the Defendant, THE TRAVELERS INDEMNITY COMPANY OF AMERICA, ("Defendant" or "TRAVELERS"), would respectfully show and allege to the Court as follows:

### GENERAL ALLEGATIONS

1.     Plaintiff, BEVERLY JENNETT, owns the property located at 224 Chapman Drive, Lebanon, Tennessee 37087.

2.     Defendant, THE TRAVELERS INDEMNITY COMPANY OF AMERICA, is a for-profit foreign insurance company authorized to engage in, and does engage in, the sale and delivery of property insurance within the State of Tennessee. The registered agent for service of process of THE TRAVELERS INDEMNITY COMPANY OF AMERICA is the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, Tennessee, 37243.

EXHIBIT
A

3.     Plaintiff's claim for relief arises from a covered sinkhole loss to her property located at 224 Chapman Drive, Lebanon, Tennessee 37087 ("Property").  Venue is proper pursuant to Tenn. Code. Ann. § 20-4-103.

4.     At all times material hereto, Plaintiff has been the owner of the Property.

5.     Plaintiff renewed or procured a policy of homeowner's insurance, policy number 918439309 633 1 ("Policy"), from Defendant covering the above-referenced property from July 31, 2012 through July 31, 2013.  A copy of the certified Policy is attached hereto as Exhibit 1.

6.     In consideration of monies paid by Plaintiff to Defendant, the Policy was issued, insuring the Plaintiff's property against risks, including sinkholes.   The insurance policy provided dwelling insurance coverage in the amount of $177,000.00, in addition to other coverages.

7.     Plaintiff has renewed the Policy each and every year and has paid all premiums due thereunder and otherwise met all conditions of coverage thereunder.

8.     On or about April 10, 2013, while the Policy was in full force and effect, the Property was damaged as a result of sinkhole activity.

9.     The damage to Plaintiff's Property is caused by a covered peril under the Policy.

10.    A notice of loss and damages was properly given by Plaintiff to Defendant in accordance with the terms of the Policy.

11.    Defendant sent a professional engineer, Rimkus Consulting Group, Inc. ("Rimkus"), to Plaintiff's Property who confirmed that there was damage to the home, but stated that was caused by perils excluded under the policy and not by sinkhole activity.

12.    On June 10, 2013, Defendant sent a letter to Plaintiff stating that Rimkus determined that sinkhole activity was not a cause of loss and denied the claim.

2

13.    On or about January 30, 2014, Plaintiff, through counsel, sent a request that the full amount be paid or that Plaintiff would seek a bad faith penalty for the handling of his claim.

14.    On or about February 12, 2014, Defendant sent correspondence confirming its denial of Plaintiff's claim.

15.    Plaintiff has complied fully with all of the provisions of the Policy, but Defendant has declined or refused to make payment to Plaintiff for the loss and damage sustained.

16.    Plaintiff has been required to retain the services of the undersigned counsel and is obligated to pay them reasonable fee for their services.

## BREACH OF CONTRACT

17.    Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 16 above as though fully set forth herein.

18.    Defendant has breached the Policy by denying coverage and failing and refusing to pay all benefits due thereunder for the claim of sinkhole activity.

19.    Defendant failed to properly investigate the Property as required under the Policy and by state statute.

20.    Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of this claim.

21.    Defendant failed to investigate the Plaintiff's claim in a prompt and thorough manner.

22.    Defendant intentionally ignored requests to reconsider its wrongful denial of insurance coverage for the Plaintiff's claim.

23.    Defendant represented to its insured that exclusionary language contained in the Policy excluded coverage of the claim, when the Defendant knew or should have known that it

3

did not exclude coverage. Such acts or omissions were committed intentionally, recklessly, and/or negligently.

24.     Defendant owes Plaintiff prejudgment interest, expert fees, costs, the costs of all structurally necessary repairs, and, if the home is not repairable within applicable coverage limits, and amount equal to such limits for the total constructive loss.

## VIOLATIONS OF THE TENNESSEE
## CONSUMER PROTECTION ACT

25.     Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 24 above as though fully set forth herein.

26.     Defendant has violated the Tennessee Consumer Protection Act of 1977 ("TPCA"), §§ 47-18-101, *et seq.*, by engaging in various unfair, misleading or deceptive acts or practices, including, but not limited to:

(A)     attempting to deceive or misrepresenting or failing to act fairly by not paying Plaintiff for damages, when Defendant represented in its policy it would provide coverage for covered perils, in violation of Tenn. Code Ann. §§ 47-18-104(a), (b)(5) and (b)(27); and,

(B)     failing to comply with Tenn. Code Ann. §§ 56-7-130 when Defendant had an obligation to comply with Tenn. Code Ann. §§ 56-7-130 in violation of Tenn. Code Ann. §§ 47-18-104(a), and (b)(27).

27.     The Defendant's acts and/or omissions in violation of the TCPA were made willfully and knowingly, thereby entitling Plaintiff to treble damages and attorney fees pursuant to Tenn. Code Ann. § 47-18-109.

## FRAUD AND MISREPRESENTATION

28.     Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 27 above as though fully set forth herein.

29.     Defendant committed fraud by intentionally or recklessly misrepresenting to the insured Plaintiff that the reason for denial was because of a misrepresentation of the meaning of

4

terms within the sinkhole endorsement. Such misrepresentation was committed knowingly and recklessly for the purpose of taking undue advantage of the insured and was justifiably relied on by the insured, who accepted the representation as true.

## UNFAIR CLAIMS PRACTICES

30. Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 29 above as though fully set forth herein.

31. Defendant committed unfair claims practices in violation of Tenn. Code Ann. §§ 56-8-101 through 56-8-111, including, but not limited to:

    (A) Failing to make a good faith attempt to effect prompt, fair, and equitable payment of Plaintiff's claim, in violation of Tenn. Code Ann. § 56-8-105;

    (B) Refusing to pay Plaintiff's claim without conducting a reasonable investigation in violation of Tenn. Code Ann. § 56-8-105; and,

    (C) Knowingly misrepresenting relevant policy provisions relating to coverages at issue in violation of Tenn. Code Ann. § 56-8-105.

32. The Defendant's acts and/or omissions regarding this claim were made willfully or knowingly and supports Plaintiff's claim for Breach of Contract, violations of the TCPA, and bad faith.

## NEGLIGENCE *PER SE*

33. Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 32 above as though fully set forth herein.

34. Defendant failed to follow the minimum standards for investigating a sinkhole claim as set forth in Tenn. Code Ann. § 56-7-130 (d), including but not limited to the following respects:

    (A) Defendant denied after receiving a report confirming sinkhole activity Tenn. Code Ann. § 56-7-130 (d)(2);

5

(B)     Defendant ignored a written certification stating that the cause of the claim was sinkhole activity; and,

(C)     After additional requests by the Plaintiff, Defendant still failed to conduct analysis of sufficient scope to eliminate sinkhole activity as the cause of the damage as required under Tenn. Code Ann. § 56-7-130-(d)(2).

35.     As a result of Defendant's failure to perform its statutory duty, Plaintiff has been injured. Plaintiff was within the protection of the Tenn. Code Ann. § 56-7-130 and § 47-18-101, *et seq.* and was intended to benefit from these laws.

## BAD FAITH

36.     Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 35 above as though fully set forth herein.

37.     Defendant's failure and refusal to pay is not in good faith, and such failure to pay has inflicted expense, loss, and injury upon Plaintiff. Accordingly, Plaintiff is entitled to recover, in addition to the amount of the insured loss and interest thereon, an amount equal to twenty-five percent (25%) of the liability for the loss, pursuant to Tenn. Code Ann. § 56-7-105.

38.     The acts and/or omissions of Defendant constitute bad faith with respect to the exercise of its duties and obligations to the Plaintiff, including, but not limited to:

(A)     Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of insurance claims;

(B)     Defendant failed to investigate the Plaintiff's claims in a prompt and thorough manner; and,

(C)     Defendant intentionally ignored requests to pay the claim of insurance policy coverage for the Plaintiff's claims.

39.     Defendant has exhibited a pattern of conduct with regard to its claims handling practices, which has resulted in repeated misconduct amounting to intentional or reckless bad faith toward its insureds. A history of court determinations and complaints of bad faith conduct

6

on the part of Defendant has put Defendant on notice that its claims handling practices have resulted in repeated incidents of bad faith. In spite of such notice, Defendant has intentionally or recklessly or carelessly failed to correct its corporate policies or otherwise train its personnel in such a manner as to reduce or eliminate this misconduct.

WHEREFORE, Plaintiff respectfully request the Court to enter judgment against Defendant for (i) actual damages; (ii) costs, including expert fees; (iii) reasonable attorneys' fees; (iv) all general and special damages, including but not limited to the full cost of repair or replacement of Plaintiff's home; (v) pre-judgment interest; (vi) treble damages; and (vii) any other relief as the Court deems just and appropriate. Plaintiff prays for all relief and damages to which he is entitled under the common law, and the Tennessee Consumer Protection Act, including compensatory damages, treble damages, attorney fees, and costs.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury of twelve (12) persons to try all issues so triable in this matter and such further and general relief to which he may be entitled.

Respectfully submitted,

By: _____

***Thompson Trial Group, P.A.***
Thomas W. Thompson, Esquire
thompson@ttglaw.com
TBN: 25817
4725 North Lois Avenue
Tampa, Florida 33614-7046
Telephone:     (813) 254-1800
Facsimile:     (813) 254-1844
Attorney for Plaintiffs

7


**TRAVELERS**

# HOMEOWNERS POLICY

| **Named Insured** | **Your Service Center Address** |
|---|---|
| BEVERLY JENNETT | KNOXVILLE BUSINESS CENTER |
| 224 CHAPMAN DR | P O BOX 59059 |
| LEBANON TN 37087 | KNOXVILLE   TN    379509059 |

| | |
|---|---|
| **Your Policy Number:**   918439309 633 1 | **For Policy Service Call:** 1-800-842-5075 |
| **Your Account Number:**   918439309 | **For Claim Service Call:** 1-800-CLAIM33 |

**Policy Period**
FROM: 07-31-12 To: 07-31-13  12:01 A.M.
STANDARD TIME AT THE RESIDENCE PREMISES

**Location of Residence Premises**
224 CHAPMAN DR
LEBANON TN 37087

Change Effective Date: 07/31/12

No Change in Premium

Reason for Change: Change to Mortgagee 1

| Section I - Property Coverages | Limits of Liability | | Premium | |
|---|---|---|---|---|
| A - DWELLING | $ | 177,000 | $ | 1,580.00 |
| B - OTHER STRUCTURES | | 17,700 | | INCL |
| C - PERSONAL PROPERTY | | 123,900 | $ | 35.00 |
| D - LOSS OF USE | | 35,400 | | INCL |

| Section II - Liability Coverages | | | | |
|---|---|---|---|---|
| E - PERSONAL LIABILITY (BODILY INJURY AND PROPERTY DAMAGE) EACH OCCURRENCE | $ | 300,000 | $ | 27.00 |
| F - MEDICAL PAYMENTS TO OTHERS- EACH PERSON | | 5,000 | | INCL |

### Policy Forms and Endorsements

| | | | |
|---|---|---|---|
| HO-3 | (06-91) | Homeowners 3 Special Form | |
| HA-300 TN | (08-09) | Special Provisions | |
| HO-827 | (07-02) | Limited Fungi, Other Microbes or Rot Remediation | $5,000 |

| **Total Premium** | $ | 1,642.00 |
|---|---|---|

### Your Premium Reflects the Following Credits or State Surcharges

| | |
|---|---|
| Security Credit | -63.00 |
| Loss Experience Surcharge | $274.00 |

Continued on next page
Insured Copy

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 8 of 41 PageID #: 11

**Policy Deductible:** $ 500.00 All perils insured against

In case of loss under section I, only that part of the loss over the stated deductible is covered.

**First Mortgagee**

NATIONSTAR MORTGAGE
OISAOA
PO BOX 7729
SPRINGFIELD        OH 45501
LOAN NUMBER: 0596905533

**Your Insurer:**  The Travelers Indemnity Company of America
One of The Travelers Property Casualty Companies
One Tower Square, Hartford, CT 06183

**For Your Information**

For information about how Travelers compensates independent agents and brokers, please visit www.Travelers.com or call our toll free telephone number 1-866-904-8348. You may also request a written copy from Marketing at One Tower Square, 2GSA, Hartford, Connecticut 06183.

Thank you for insuring with Travelers. We appreciate your business. If you have any questions about your insurance, please contact your agent or representative.

These declarations with policy provisions HO-3 (06-91) and any attached endorsements form your Homeowners Insurance Policy. Please keep them with your policy for future reference.



**TRAVELERS**

This is to certify that this is a reproduction, from the company's records, of the insurance policy between the insured and the insuring company as described on the Declarations Page.   It is a full, true and complete reproduction of the insurance policy.   No insurance is afforded hereunder.

Signature: *Ethel McFadden*

Date:  7.12.2013

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LIMITED FUNGI, OTHER MICROBES OR ROT REMEDIATION

### DEFINITIONS

The following definition is added:

• "Fungi"

　a. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi".

　b. Under Section II, this does not include any "fungi" that are, are on, or are contained in, products or goods intended for consumption.

### SECTION I – PROPERTY COVERAGES
### COVERAGE D - LOSS OF USE

Paragraphs **1.** and **2.** are deleted and replaced by the following:

**1. Additional Living Expense**

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. However, additional living expense due to "fungi", other microbes or rot remediation will not be paid in addition to any amounts paid or payable under the Additional Coverage **Limited "Fungi", Other Microbes Or Rot Remediation.**

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere. This period of time is not limited by expiration of this policy.

**2. Fair Rental Value**

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in. However, fair rental value due to "fungi", other microbes or rot remediation will not be paid in addition to any amounts paid or payable under the Additional Coverage **Limited "Fungi", Other Microbes Or Rot Remediation.**

Payment will be for the shortest time required to repair or replace such premises. This period of time is not limited by expiration of this policy.

### ADDITIONAL COVERAGES

The following additional coverage is added:

• **Limited "Fungi", Other Microbes Or Rot Remediation**

　a. If a loss caused by a Peril Insured Against under Section I results in "fungi", other microbes or rot, we will pay for:

　　(1) Remediation of the "fungi", other microbes or rot. This includes payment for the reasonable and necessary cost to:

　　　(a) Remove the "fungi", other microbes or rot from covered property or to repair, restore or replace that property; and

　　　(b) Tear out and replace any part of the building as needed to gain access to the "fungi", other microbes or rot;

　　(2) Any reasonable and necessary increase in living expense you incur so that your household can maintain its normal standard of living or loss of fair rental value if the "fungi", other microbes or rot makes the "residence premises" not fit to live in. We do not cover loss or expense due to cancellation of a lease or agreement; and

　　(3) Any reasonable and necessary testing or monitoring of air or property to confirm the absence, presence or level of the "fungi", other microbes or rot, whether performed prior to, during or after removal, repair, restoration or replacement.

　b. We will pay under this additional coverage only if:

　　(1) The covered loss occurs during the policy period;

　　(2) All reasonable means were used to save and preserve the property at the time of and after the covered loss; and

　　(3) We receive prompt notice of the covered cause of loss that is alleged to have resulted in "fungi", other microbes or rot.

　c. The most we will pay under this additional coverage is $ _____ . This is the most we will pay for the total of all loss or costs regardless of the:

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 11 of 41 PageID #: 14

(1) Number of locations or items of property insured under this policy; or

(2) Number of losses or claims made.

**d.** This is not additional insurance and does not increase the limit of liability that applies to the damaged property.

## SECTION I – PERILS INSURED AGAINST

In form **HO-3** (and endorsements HA-15, HA-615, 57000 and 58065, if applicable) paragraph **C.7.c.** is deleted and replaced by the following:

**c.** Smog, rust or other corrosion;

## SECTION I – EXCLUSIONS

The following exclusion is added:

9. **"Fungi", Other Microbes or Rot,** meaning any loss or cost resulting from, arising out of, caused by, consisting of, or related to, "fungi", other microbes or rot. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. This exclusion does not apply to "fungi", other microbes or rot remediation coverage that may be afforded under the Additional Coverage **Limited "Fungi", Other Microbes Or Rot Remediation.**

## SECTION II – EXCLUSIONS

The following exclusion is added under item **1. Coverage E - Personal Liability and Coverage F - Medical Payments To Others:**

**m.** "Bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot. This includes:

(1) The cost of testing, monitoring, abating, mitigating, removing, remediating or disposing of "fungi", other microbes or rot;

(2) Any supervision, instruction, disclosures, or failures to disclose, recommendations, warnings, or advice given, or that allegedly should have been given, in connection with "bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot, or the activities described in **m.(1)** above;

(3) Any obligation to share with or repay another who must pay damages because of "bodily injury" or "property damage" damage of the type described in this exclusion. This applies regardless of any other cause that contributed directly or indirectly, concurrently or in any sequence to the "bodily injury" or "property damage"; and

(4) Liability imposed upon any "insured" by any governmental authority for "bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot.

All other provisions of this policy apply.

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 12 of 41 PageID #: 15

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SPECIAL PROVISIONS – TENNESSEE

## DEFINITIONS

The following definitions are added:

**10. "fuel system"** means:

  **a.** One or more containers, tanks or vessels which have a total combined fuel storage capacity of 100 or more U.S. gallons; and:

    **(1)** Are, or were, used to hold fuel; and

    **(2)** Are, or were, located on any one location;

  **b.** Any pumping apparatus, which includes the motor, gauge, nozzle, hose or pipes that are, or were, connected to one or more containers, tanks or vessels described in Paragraph **a.**;

  **c.** Filler pipes and flues connected to one or more containers, tanks or vessels described in Paragraph **a.**;

  **d.** A boiler, furnace or a water heater, the fuel for which is stored in a container, tank or vessel described in Paragraph **a.**;

  **e.** Fittings and pipes connecting the boiler, furnace or water heater to one or more containers, tanks or vessels described in Paragraph **a.**; or

  **f.** A structure that is specifically designed and built to hold escaped or released fuel from one or more containers, tanks or vessels described in Paragraph **a.**

A **fuel system** does not include any fuel tanks that are permanently affixed to a motor vehicle or watercraft owned by an **insured**, used for powering the motor vehicle or watercraft and not used at any time or in any manner for **business**.

**11. "sinkhole collapse"** means:

Actual physical damage to the dwelling and other covered structures:

**1.** Arising out of; or

**2.** Caused by:

the sudden settlement or collapse of the earth supporting such property. The settlement or collapse must result from subterranean voids created by the action of water on limestone or similar rock formations.

## SECTION I – PROPERTY COVERAGES

### COVERAGE C - PERSONAL PROPERTY SPECIAL LIMITS OF LIABILITY

Items **8.** and **9.** are deleted and replaced by the following:

**8.** $5,000 on property, on the **residence premises** used at any time or in any manner for any **business** purpose.

**9.** $1,000 on property away from the **residence premises** used at any time or in any manner for any **business** purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits **10.** and **11.** below.

## SECTION I – ADDITIONAL COVERAGES

The following additional coverage is added: (Forms HO-2 and HO-3 only)

• Ordinance or Law.

  **a.** You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

    **(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

    **(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

    **(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

  **b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 13 of 41 PageID #: 16

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

8. **Collapse** is deleted and replaced by the following:

8. **Collapse.**

a. With respect to this Additional Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) Perils Insured Against in Coverage C – Personal Property. These perils apply to covered buildings and personal property for loss insured by this Additional Coverage;

(2) Decay that is hidden from view, unless the presence of such decay is known to you prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to you prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under b.(2) through (6) above unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I – EXCLUSIONS

The first paragraph of this section is deleted and replaced by the following:

We do not cover any direct or indirect loss or damage caused by, resulting from, contributing to or aggravated by any of these excluded perils. Loss from any of these perils is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

These exclusions apply whether or not the loss event:

(1) Results in widespread damage;

(2) Affects a substantial area; or

(3) Occurs gradually or suddenly.

These exclusions also apply whether or not the loss event arises from:

(1) Any acts of nature;

(2) Any human action or inaction;

(3) The forces of animals, plants or other living or dead organisms; or

(4) Any other natural or artificial process.

2. **Earth Movement** is deleted and replaced by the following:

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 14 of 41 PageID #: 17

2. **Earth Movement**, meaning events that include but are not limited to the following:

   a. Earthquake and earthquake aftershocks;

   b. Volcano activity including but not limited to:

      1. Volcanic Eruption;

      2. Volcanic Explosion;

      3. Effusion of volcanic material; or

      4. Lava Flow;

   c. Mudslide, including mudflow, debris flow, land-slide, avalanche, or sediment;

   d. Subsidence;

   e. Excavation collapse;

   f. Erosion;

   g. Any expansion, shifting, rising, sinking, contracting, or settling of the earth, soil, or land.

   This exclusion applies whether or not the earth, soil or land is combined or mixed with water or any other liquid or natural or man made material.

   The Earth Movement Exclusion does not apply to "sinkhole collapse".

   However, loss caused directly by the specific perils:

   a. fire;

   b. explosion;

   c. breakage of building or dwelling glass or safety glazing material, including storm doors or windows; or;

   d. theft;

   following any earth movement is covered.

3. **Water Damage** is deleted and replaced by the following:

3. **Water damage**, meaning;

   a. Flood, surface water, ground water, storm surge, waves, wave wash, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, whether or not a result of precipitation or driven by wind;

   b. any water or water borne material that enters through or backs up from a sewer or drain, or which overflows from a sump, sump pump or related equipment;

   c. any water or water borne material located below the surface of the ground including water or water borne material:

      (1) Which exerts pressure on, seeps, leaks or flows into:

         (a) Any part of the dwelling or other structures;

         (b) The foundation of the dwelling or other structures;

         (c) Any paved surface located on the residence premises; or

         (d) Any spa, hot tub, or swimming pool.

      (2) Which causes **earth movement**; or

   d. any overflow, release, migration or discharge of water in any manner from a dam, levee, dike, hurricane barrier or any water or flood control device.

   Direct loss by fire, explosion or theft resulting from water damage will be covered.

## SECTION I – CONDITIONS

3. **Loss Settlement.** In Forms **HO-2** and **HO-3** only, paragraph **c.(4)** is deleted and replaced by the following:

   (4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair is complete, we will settle the loss according to the provisions of **c.(1)** and **c.(2)** above.

   However, if the cost to repair or replace is less than $2,500 we will settle the loss according to the provisions of **c.(1)** and **c.(2)** above, whether or not actual repair or replacement is complete.

7. **Other Insurance**, in Form **HA-6** only, is deleted and replaced by the following:

7. **Other Insurance and Service Agreement.**

   a. If a loss covered by this policy is also covered by:

      (1) Other insurance, except insurance in the name of a corporation or association of property owners, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

      (2) A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

Case 3:14-cv-01288   Document 1-1  ˙Filed 06/12/14   Page 15 of 41 PageID #: 18

b. If, at the time of loss, there is other insurance or a service agreement in the name of a corporation or association of property owners covering the same property covered by this policy, this insurance will be excess over the amount recoverable under such other insurance or service agreement.

## SECTION II - EXCLUSIONS

1. **Coverage E – Personal Liability and Coverage F – Medical Payments to Others**: The following items are added:

   - or any loss, cost, payment or expense, including, but not limited to, defense and investigation, of any kind arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead pigment, lead compounds or lead in any form which is or was contained or incorporated into any material or substance. This exclusion applies, but is not limited to:

     (1) Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

     (2) Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such **bodily injury** or **property damage**, damages, loss, cost, payment or expense; or

     (3) Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of lead, lead pigment, lead compounds or materials or substances containing lead in any form.

   - arising out of, resulting from, caused by or contributed to by the escape or release of fuel from a **fuel system**. This exclusion applies, but is not limited to:

     (1) Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

     (2) Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such **bodily injury** or **property damage**, damages, loss, cost, payment or expense; or

     (3) Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of fuel in any form.

   However, this exclusion does not apply to **bodily injury** or **property damage** arising out of fire or explosion that results from such escaped or released fuel.

## SECTION II - ADDITIONAL COVERAGES

The following additional coverage is added:

5. **Property Damage** coverage for Military Personnel and Federal Government Employees:

   If an **insured** is:

   a. a United States Government Employee; or

   b. a member of the United States Military,

   We agree to pay for **property damage** to United States government property, for which such **insured** is responsible under applicable rules or regulations.

   Payment for such **property damage** will be at replacement cost. Under this endorsement "replacement cost" is defined as the amount necessary to repair or replace the damaged property with no deduction for depreciation, subject to the Limit of Liability for this Additional Coverage.

   Our Limit of Liability, per **occurrence**, under this Additional Coverage for all damages resulting from any one **occurrence** shall not exceed two months basic pay for the **insured**, as of the time of the **occurrence**.

   We will not pay for **property damage** to:

   a. **aircraft**

   b. motor vehicles, including vehicles not designed for travel on public roads or subject to registration;

   c. watercraft; or

   d. weapons

   We will not pay for **property damage**:

   a. to the extent of any amount payable under Section I of this policy; or

   b. caused intentionally by any **insured** who is 13 years of age or older.

All other provisions of this policy apply.

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 16 of 41 PageID #: 19



# *Homeowners Policy Booklet*

# *from Travelers Property Casualty*

HO-3 HOMEOWNERS 3 -SPECIAL FORM

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 17 of 41 PageID #: 20

# YOUR HOMEOWNERS POLICY QUICK REFERENCE

**DECLARATIONS PAGE**
    **Your Name**
    **Location of Your Residence**
    **Policy Period**
    **Coverages**
    **Amounts of Insurance**
    **Deductible Amounts**

| | | Beginning On Page |
|---|---|---|
| | AGREEMENT | 1 |
| | DEFINITIONS | 1 |
| **SECTION I PROPERTY COVERAGES** | COVERAGES | 2 |
| | Coverage A - Dwelling | 2 |
| | Coverage B - Other Structures | 2 |
| | Coverage C - Personal Property | 2 |
| | Coverage D - Loss of Use | 4 |
| | Additional Coverages | 4 |
| | PERILS INSURED AGAINST | 7 |
| | EXCLUSIONS | 10 |
| | CONDITIONS | 11 |
| | Your Duties After Loss | 11 |
| | Loss Settlement | 12 |
| **SECTION II LIABILITY COVERAGES** | COVERAGES | 14 |
| | Coverage E - Personal Liability | 14 |
| | Coverage F - Medical Payments to Others | 14 |
| | EXCLUSIONS | 15 |
| | ADDITIONAL COVERAGES | 17 |
| | CONDITIONS | 18 |
| | Limit of Liability | 18 |
| | Duties After Loss | 18 |
| **SECTION I and SECTION II CONDITIONS** | CONDITIONS | 19 |
| | Policy Period | 19 |
| | Cancellation | 19 |
| | Nonrenewal | 20 |

HO-3 (06-91)

# Homeowners 3 Special Form

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse, if a resident of the same household, and "we", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **"aircraft"** means any contrivance, whether or not tethered, used or designed for air or space flight capable of carrying cargo or people. The contrivance may be either lighter or heavier than the air, engine powered or designed or used to float, glide, soar or control descent.

2. **"bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. **"business"** includes trade, profession or occupation

4. **"insured"** means you and the following residents of your household:

   a. your relatives;

   b. any other person under the age of 21 who is in the care of any person named above.

   Under Section II, **"insured"** also means:

   c. with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **4.a.** or **4.b.** above. A person or organization using or having custody of these animals or watercraft in the course of any **business**, or without permission of the owner is not an **insured**;

   d. with respect to any vehicle to which this policy applies:

      (1) persons while engaged in your employ or that of any person included in **4.a.** or **4.b.** above; or

      (2) other persons using the vehicle on an **insured location** with your consent.

5. **"insured location"** means:

   a. the residence premises;

   b. the part of any other premises, other structures, and grounds, used by you as a residence and which is shown in the Declarations or which is acquired by you during the policy period for your use as a residence;

   c. any premises used by you in connection with the premises included in **5.a.** or **5.b.**;

   d. any part of a premises not owned by any **insured** but where any **insured** is temporarily residing;

   e. vacant land owned by or rented to any **insured** other than farm land;

   f. land owned by or rented to any **insured** on which a one or two family dwelling is being constructed as a residence for any **insured**;

   g. individual or family cemetery plots or burial vaults of any **insured**;

   h. any part of a premises occasionally rented to any **insured** for other than **business purposes**.

   i. any part of a premises, which is not a residence, owned or rented by any **insured** used for other than business purposes to:

      (1) moor or store watercraft;

      (2) garage or store motorized land vehicles; or

      (3) park or store **aircraft**.

6. **"occurrence"** means an accident, including continuous or repeated exposure to substantially the same generally harmful conditions which results, during the policy period, in:

   a. **bodily injury**; or

   b. **property damage**.

7. **"property damage"** means physical injury to, destruction of, or loss of use of tangible property.

8. **"residence employee"** means an employee of any **insured** who performs duties in connection with the maintenance or use of the **residence premises**, including household or domestic services, or who performs duties elsewhere of a

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 19 of 41 PageID #: 22

lar nature not in connection with the **business** of any **insured**.

9. **"residence premises"** means the one or two family dwelling, other structures, and grounds or that part of any other building where you reside and which is shown as the **"residence premises"** in the Declarations.

---

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - DWELLING

**We cover:**

a. the dwelling on the **residence premises** shown in the Declarations used principally as a private residence, including structures attached to the dwelling on the same or contiguous foundation; and

b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**.

THIS COVERAGE DOES NOT APPLY TO:

a. FENCES;

b. EXTERIOR WALLS THAT DO NOT SUPPORT THE ROOF OF THE DWELLING;

c. LAND, INCLUDING LAND ON WHICH THE DWELLING IS LOCATED.

### COVERAGE B - OTHER STRUCTURES

**We cover:**

Other structures on the **residence premises**, separated from the dwelling by clear space. Structures with a separation from the dwelling and its foundation and linked by only a conduit, deck, fence, patio, utility line, walk, wall, or similar connector means that structure is an other structure. Other structures include but are not limited to:

a. Barns;

b. Exterior walls that do not support the roof of the dwelling;

c. Fences;

d. Garages that are detached from the dwelling;

e. Gazebos;

f. Sheds; or

g. Swimming pools that are exterior to the walls supporting the roof of the dwelling.

THIS COVERAGE DOES NOT APPLY TO LAND, INCLUDING LAND ON WHICH THE OTHER STRUCTURES ARE LOCATED.

WE DO NOT COVER OTHER STRUCTURES:

a. USED IN WHOLE OR IN PART FOR **BUSINESS** PURPOSES: OR

b. RENTED OR HELD FOR RENTAL TO ANY PERSON NOT A TENANT OF THE DWELLING, UNLESS USED SOLELY AS A PRIVATE GARAGE. Use of Coverage B does not reduce the amount of coverage available to you under Coverage A - Dwelling.

### COVERAGE C - PERSONAL PROPERTY

We cover personal property owned or used by any **insured** while it is anywhere in the world. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied by any **insured**. In addition, we will cover at your request, personal property owned by a guest or a **residence employee**, while the property is in any residence occupied by any **insured**.

Our limit of liability for personal property usually located at any **insured's** residence, other than the **residence premises**, is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. THIS LIMIT APPLIES TO THE PERSONAL PROPERTY OF INSUREDS, INCLUDING, BUT NOT LIMITED TO, STUDENTS WHO RESIDE AWAY FROM THE RESIDENCE PREMISES PERIODICALLY FOR THE PERSONAL PROPERTY AT THE LOCATION AWAY. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

**SPECIAL LIMITS OF LIABILITY.** THESE LIMITS DO NOT INCREASE THE COVERAGE C LIMIT OF LIABILITY. THE SPECIAL LIMIT FOR EACH FOLLOWING NUMBERED CATEGORY IS THE TOTAL LIMIT FOR EACH OCCURRENCE FOR ALL PROPERTY IN THAT NUMBERED CATEGORY.

1. $200 ON MONEY, BANK NOTES, BULLION, GOLD OTHER THAN GOLDWARE, SILVER OTHER THAN SILVERWARE, PLATINUM, COINS AND MEDALS.

2. $1,000 ON SECURITIES, ACCOUNTS, DEEDS, EVIDENCES OF DEBT, LETTERS OF CREDIT, NOTES OTHER THAN BANK NOTES, MANUSCRIPTS, PASSPORTS, TICKETS AND STAMPS.

3. $1,000 ON WATERCRAFT, INCLUDING THEIR TRAILERS, FURNISHINGS, EQUIPMENT AND OUTBOARD MOTORS.

Case 3:14-cv-01288  Document 1-1  Filed 06/12/14  Page 20 of 41 PageID #: 23

4. $1,000 ON TRAILERS NOT USED WITH WA-TERCRAFT.

5. $1,000 FOR LOSS BY THEFT OF JEWELRY, WATCHES, FURS, PRECIOUS AND SEMIPRE-CIOUS STONES.

6. $2,500 FOR LOSS BY THEFT OF SILVER-WARE, SILVER-PLATED WARE, GOLDWARE, AND GOLD-PLATED WARE AND PEWTER-WARE. THIS INCLUDES FLATWARE, HOLLO-WARE, TEA SETS, TRAYS AND TROPHIES MADE OF OR INCLUDING SILVER, GOLD OR PEWTER.

7. $2,000 FOR LOSS BY THEFT OF FIREARMS.

8. $2,500 ON PROPERTY, ON THE **RESIDENCE PREMISES** USED AT ANY TIME OR IN ANY MANNER FOR ANY **BUSINESS PURPOSE**;

9. $250 ON PROPERTY AWAY FROM THE **RESIDENCE PREMISES** USED AT ANY TIME OR IN ANY MANNER FOR ANY BUSINESS PURPOSE. HOWEVER, THIS LIMIT DOES NOT APPLY TO LOSS TO ADAPTABLE ELEC-TRONIC APPARATUS AS DESCRIBED IN SPECIAL LIMITS 10. AND 11. BELOW.

10. $1000 FOR LOSS TO ELECTRONIC APPARA-TUS, WHILE IN OR UPON A MOTOR VEHICLE OR OTHER MOTORIZED LAND CONVEYANCE, IF THE ELECTRONIC APPARATUS IS EQUIPPED TO BE OPERATED BY POWER FROM THE ELECTRICAL SYSTEM OF THE VEHICLE OR CONVEYANCE WHILE RETAIN-ING ITS CAPABILITY OF BEING OPERATED BY OTHER SOURCES OF POWER. ELEC-TRONIC APPARATUS INCLUDES:

    a. ACCESSORIES AND ANTENNAS; OR

    b. TAPES, WIRES, RECORDS, DISCS OR OTHER MEDIA;

    FOR USE WITH ANY ELECTRONIC APPARA-TUS.

11. $1000 FOR LOSS TO ELECTRONIC APPARA-TUS, WHILE NOT IN OR UPON A MOTOR VE-HICLE OR OTHER MOTORIZED LAND CONVEYANCE, IF THE ELECTRONIC APPA-RATUS:

    a. IS EQUIPPED TO BE OPERATED BY POWER FROM THE ELECTRICAL SYSTEM OF THE VEHICLE OR CONVEYANCE WHILE RETAINING ITS CAPABILITY OF BEING OPERATED BY OTHER SOURCES OF POWER;

    b. IS AWAY FROM THE **RESIDENCE PREM-ISES**; AND

    c. IS USED AT ANY TIME OR IN ANY MAN-NER FOR ANY **BUSINESS** PURPOSE.

ELECTRONIC APPARATUS INCLUDES:

    a. ACCESSORIES AND ANTENNAS; OR

    b. TAPES, WIRES, RECORDS, DISCS OR OTHER MEDIA;

    FOR USE WITH ANY ELECTRONIC APPARA-TUS.

**PROPERTY NOT COVERED.** WE DO NOT COVER:

1. ARTICLES SEPARATELY DESCRIBED AND SPECIFICALLY INSURED IN THIS OR ANY OTHER INSURANCE;

2. ANIMALS, BIRDS OR FISH;

3. MOTORIZED LAND VEHICLES, EXCEPT WE DO COVER:

    a. MOTORIZED LAND VEHICLES INCLUDING THEIR ACCESSORIES, ATTACHMENTS, EQUIPMENT OR PARTS, NOT SUBJECT TO MOTOR VEHICLE REGISTRATION, USED TO SERVICE AN **INSURED'S** RESI-DENCE.

    b. MOTORIZED LAND VEHICLES, NOT RE-QUIRING MOTOR VEHICLE REGISTRA-TION DESIGNED FOR ASSISTING THE HANDICAPPED.

    c. EXTRA ACCESSORIES, EQUIPMENT OR PARTS DETACHED FROM A MOTORIZED LAND VEHICLE SUBJECT TO MOTOR VE-HICLE REGISTRATION, OWNED OR IN THE POSSESSION OF ANY **INSURED**, PROVIDED THAT IMMEDIATELY FOL-LOWING THE LOSS TO THE ITEMS CLAIMED THAT VEHICLE FOR WHICH THE ITEMS WERE INTENDED BE FULLY AS-SEMBLED WITH ALL OF ITS USUAL AC-CESSORIES, EQUIPMENT OR PARTS AND BE CAPABLE OF OPERATION, AS DE-SIGNED, PROPERLY AND LEGALLY, UPON THE PUBLIC WAYS FOR AN AMOUNT NOT EXCEEDING $500.

4.  a. ANY DEVICE OR INSTRUMENT, INCLUD-ING ANY ACCESSORIES OR ANTENNAS, FOR THE TRANSMITTING, RECORDING, RECEIVING OR REPRODUCTION OF SOUND WHICH IS DESIGNED TO BE SOLELY OPERATED BY POWER FROM THE ELECTRICAL SYSTEM OF A MOTOR VEHICLE, OR ANY TAPE, WIRE, RECORD, DISC OR OTHER MEDIUM FOR USE WITH ANY SUCH DEVICE OR INSTRUMENT WHILE ANY OF THIS PROPERTY IS IN OR UPON A MOTOR VEHICLE;

    b. RADAR DETECTION DEVICES.

5. **AIRCRAFT** AND **AIRCRAFT** PARTS;

Case 3:14-cv-01288 Document 1-1 Filed 06/12/14 Page 21 of 41 PageID #: 24

6. PROPERTY OF ROOMERS, BOARDERS AND OTHER TENANTS, EXCEPT PROPERTY OF ROOMERS AND BOARDERS RELATED TO ANY **INSURED**;

7. PROPERTY CONTAINED IN AN APARTMENT REGULARLY RENTED OR HELD FOR RENTAL TO OTHERS BY ANY **INSURED**;

8. PROPERTY RENTED OR HELD FOR RENTAL TO OTHERS AWAY FROM THE **RESIDENCE PREMISES**.

## COVERAGE D - LOSS OF USE

The limit of liability for Coverage D is the total for all the following coverages.

1. **Additional Living Expense.** If a loss covered under this Section makes the **residence premises** uninhabitable, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. PAYMENT SHALL BE FOR THE SHORTEST TIME REQUIRED TO REPAIR OR REPLACE THE PREMISES OR, IF YOU PERMANENTLY RELOCATE, THE SHORTEST TIME REQUIRED FOR YOUR HOUSEHOLD TO SETTLE ELSEWHERE. This period of time is not limited by expiration of this policy.

2. **Fair Rental Value.** If a loss covered under this section makes that part of the **residence premises** rented to others or held for rental by you uninhabitable, we cover its fair rental value. PAYMENTS SHALL BE FOR THE SHORTEST TIME REQUIRED TO REPAIR OR REPLACE THE PART OF THE PREMISES RENTED OR HELD FOR RENTAL. This period of time is not limited by expiration of this policy. FAIR RENTAL VALUE SHALL NOT INCLUDE ANY EXPENSE THAT DOES NOT CONTINUE WHILE THAT PART OF THE **RESIDENCE PREMISES** RENTED OR HELD FOR RENTAL IS UNINHABITABLE.

3. **Prohibited Use.** If a civil authority prohibits you from use of the **residence premises** as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover any resulting **Additional Living expense** and **Fair Rental Value loss** FOR A PERIOD NOT EXCEEDING TWO WEEKS DURING WHICH USE IS PROHIBITED.

WE DO NOT COVER LOSS OR EXPENSE DUE TO CANCELLATION OF A LEASE OR AGREEMENT.

## ADDITIONAL COVERAGES

1. **Debris Removal**.

   We will pay the reasonable expense incurred by you in:

   a. the removal of debris of Covered property PROVIDED COVERAGE IS AFFORDED FOR THE PERIL CAUSING THE LOSS; and

   b. the removal of one or more trees fallen on the **residence premises** as a result of a peril insured against UNDER SECTION I - PERILS INSURED AGAINST, COVERAGE A - DWELLING AND COVERAGE B - OTHER STRUCTURES, but not more than $500 for any one occurrence regardless of the number of fallen trees.

   Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense. However the availability of this additional amount does not change the $500 maximum payable for tree debris removal under subsection b above.

2. **Reasonable Repairs**. In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost INCURRED BY YOU FOR THE NECESSARY MEASURES TAKEN SOLELY TO PROTECT AGAINST FURTHER DAMAGE. IF THE MEASURES TAKEN INVOLVE REPAIR TO OTHER DAMAGED PROPERTY, WE WILL PAY FOR THOSE MEASURES ONLY IF THAT PROPERTY IS COVERED UNDER THIS POLICY AND THE DAMAGE TO THAT PROPERTY IS CAUSED BY AN APPLICABLE PERIL INSURED AGAINST.

   This Additional Coverage:

   a. DOES NOT INCREASE THE LIMIT OF LIABILITY THAT APPLIES TO THE COVERED PROPERTY.

   b. DOES NOT CHANGE YOUR OBLIGATIONS OR DUTIES, IF THERE IS LOSS OR DAMAGE TO COVERED PROPERTY, AS STATED IN SECTION I - CONDITIONS, CONDITION 2. YOUR DUTIES AFTER LOSS SUBSECTION d.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the **residence premises**, for loss caused by the following Perils Insured Against; Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism or malicious mischief or Theft.

   WE WILL PAY UP TO 5% OF THE LIMIT OF LIABILITY THAT APPLIES TO THE DWELLING FOR ALL TREES, SHRUBS, PLANTS OR

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 22 of 41 PageID #: 25

LAWNS. NO MORE THAN $500 OF THIS LIMIT WILL BE AVAILABLE FOR ANY ONE TREE, SHRUB OR PLANT. WE DO NOT COVER PROPERTY GROWN FOR **BUSINESS** PURPOSES.

THIS COVERAGE IS ADDITIONAL INSURANCE.

4. **Fire Department Service Charge.** WE WILL PAY UP TO $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and no more than 30 days while removed. THIS COVERAGE DOES NOT CHANGE THE LIMIT OF LIABILITY APPLYING TO THE PROPERTY BEING REMOVED.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.** We will pay up to $1,000 for:

   a. the legal obligation of any **insured** to pay because of the theft or unauthorized use of credit cards or fund transfer cards issued to or registered in any **insured's** name. WE DO NOT COVER USE BY A RESIDENT OF YOUR HOUSEHOLD, A PERSON WHO HAS BEEN ENTRUSTED WITH THE CREDIT CARD OR FUND TRANSFER CARD, OR ANY PERSON, **IF ANY INSURED** HAS NOT COMPLIED WITH ALL TERMS AND CONDITIONS UNDER WHICH THE CREDIT CARD OR FUND TRANSFER CARD IS ISSUED.

   b. loss to any **insured** caused by forgery or alteration of any check or negotiable instrument; and

   c. loss to any **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

ALL LOSS RESULTING FROM A SERIES OF ACTS COMMITTED BY ANY ONE PERSON OR IN WHICH ANY ONE PERSON IS CONCERNED OR IMPLICATED IS CONSIDERED TO BE ONE LOSS.

WE DO NOT COVER LOSS ARISING OUT OF **BUSINESS** PURSUITS OR DISHONESTY OF ANY **INSURED**.

No deductible applies to this coverage.

Defense:

a. We may make any investigation and settle any claim or suit that we decide is appropriate. OUR OBLIGATION TO DEFEND ANY CLAIM OR SUIT ENDS WHEN THE AMOUNT WE PAY FOR THE LOSS EQUALS OUR LIMIT OF LIABILITY.

b. If a claim is made or a suit is brought against any **insured** for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c. We have the option to defend at our expense any **insured** or any **insured's** bank against any suit for the enforcement of payment under Forgery coverage.

7. **Loss Assessment.** We will pay up to $1,000 for your share of any loss assessment charged during the policy period against you by a corporation or association of property owners. This only applies when the assessment is made as a result of each direct loss to the property; owned by all members collectively, caused by a Peril Insured Against under Coverage A - Dwelling.

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

THE LIMIT OF $1,000 IS THE MOST WE WILL PAY WITH RESPECT TO ANY ONE LOSS, REGARDLESS OF THE NUMBER OF ASSESSMENTS.

Under **Section I and II Conditions**, Condition **1. Policy Period** does not apply to this additional coverage.

8. **Collapse.** EXCEPT FOR LOSS CAUSED BY SETTLING, CRACKING, BULGING OR EXPANSION, we insure for risk of direct physical loss to covered property resulting from collapse of a building or any part of a building CAUSED ONLY BY ONE OR MORE OF THE FOLLOWING:

   a. hidden decay;

   b. hidden bird, insect or vermin damage;

   c. weight of contents, equipment, animals or people;

   d. weight of precipitation which collects on a roof;

   e. use of defective material or methods in alteration, construction, remodeling or renovation if the collapse occurs during the course of the alteration, construction, remodeling or renovation.

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 23 of 41 PageID #: 26

UNDER ITEMS a .- e., THIS COVERAGE DOES NOT INCLUDE LOSS TO AN AWNING, FENCE, PATIO, DRIVEWAY, ROADWAY, WALKWAY, PAVEMENT, SWIMMING POOL, SPA, HOT TUB, UNDERGROUND PIPE, FLUE, DRAIN, DECKS, CESSPOOL, SEPTIC TANK, FOUNDATION, RETAINING WALL, BULKHEAD, PIER, WHARF OR DOCK UNLESS THE LOSS IS A DIRECT RESULT OF THE COLLAPSE OF A BUILDING.

**f.** The specific Perils that follow:

(1) **Fire or Lightning**

(2) **Windstorm or Hail**

(3) **Explosion**

(4) **Riot or civil commotion**

(5) **Aircraft** including self-propelled missiles and spacecraft.

(6) **Vehicles**

(7) **Smoke**, meaning sudden and accidental damage from smoke.

(8) **Theft**

(9) **Falling objects**

(10) **Weight of ice, snow or sleet**

(11) **Accidental discharge or overflow of water or steam** from within a plumbing, drainage, heating, or air conditioning system or from within a household appliance.

(12) **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning system, or an appliance for heating water.

(13) **Freezing** of a plumbing, drainage, heating, air conditioning system or of a household appliance.

(14) **Sudden and accidental damage from artificially generated electrical current.**

These perils apply to covered building and personal property for loss insured by this additional coverage:

THIS COVERAGE DOES NOT INCREASE ANY LIMIT OF LIABILITY APPLYING TO THE DAMAGED COVERED PROPERTY.

**9. Glass or Safety Glazing Material**

We cover:

**a.** the breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

**b.** damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

THIS COVERAGE DOES NOT INCLUDE LOSS ON THE **RESIDENCE PREMISES** IF THE DWELLING HAS BEEN VACANT FOR MORE THAN 30 CONSECUTIVE DAYS IMMEDIATELY BEFORE THE LOSS. A DWELLING BEING CONSTRUCTED IS NOT CONSIDERED VACANT.

Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

THIS COVERAGE DOES NOT INCREASE THE LIMIT OF LIABILITY THAT APPLIES TO THE DAMAGED PROPERTY.

**10. Refrigerated Products Coverage**

We will pay up to $500 for damage or loss to the contents of freezers or refrigerated units caused by a power interruption or a mechanical failure of the appliance located on the **residence premises.**

POWER INTERRUPTION SHALL NOT INCLUDE DISCONNECTION OF THE ELECTRICAL SERVICE TO THE APPLIANCE BY UNPLUGGING IT FROM THE ELECTRICAL SOURCE OR BY SWITCHING THE APPLIANCE OR ELECTRIC SOURCE OFF.

Mechanical failure means the breakdown or malfunction of the appliance compressor or its related components resulting in the loss of refrigeration.

WHEN YOU LEARN OF A POWER INTERRUPTION OR MECHANICAL FAILURE OCCURRENCE THAT MAY RESULT IN LOSS OR DAMAGE TO THE CONTENTS OF A FREEZER OR REFRIGERATED UNIT, YOU MUST USE ALL REASONABLE MEANS TO PROTECT THIS PROPERTY FROM FURTHER LOSS OR DAMAGE. IF YOU DO NOT PROTECT THESE REFRIGERATED PRODUCTS FROM FURTHER DAMAGE, THIS COVERAGE WILL NOT APPLY. A $100 DEDUCTIBLE APPLIES TO THIS COVERAGE.

**11. Excavation Coverage**

We will pay the reasonable cost INCURRED BY YOU UP TO $1,000, for the digging or excavation of the grounds on the **residence premises** to examine or unearth underground:

**a.** Drains;

**b.** Flues;

**c.** Pipes;

**d.** Tanks; or

Case 3:14-cv-01288　Document 1-1　Filed 06/12/14　Page 24 of 41 PageID #: 27

e. Wiring

TO PREVENT DAMAGE OR RESTORE UTILITY SERVICE ON SUCH PREMISES TO THE:

a. DWELLING;

b. OTHER STRUCTURE(S); OR

c. CONTENTS.

WE WILL PAY ONLY FOR THE DIGGING OR EXCAVATION, REASONABLY NECESSARY UNDER THIS ADDITIONAL COVERAGE. LOSS OR DAMAGE TO THE:

a. DRAINS;

b. FLUES;

c. PIPES;

d. TANKS; OR

e. WIRING

IS NOT COVERED UNDER THIS ADDITIONAL COVERAGE.

WE WILL NOT PAY FOR:

a. ANY DIGGING OR EXCAVATION BEYOND THE UTILITY SHUT-OFF POINT;

b. TREES, SHRUBS, PLANTS OR LAWNS; OR

c. ANY REFILL OR BACKFILL.

**12. Spillage or Residue Removal Coverage**

We will pay up to $5,000 for the removal of

a. substances accidently spilled on; or

b. residue covering

an interior building item insured under Coverage A - Dwelling or Coverage B Other Structures.

THIS COVERAGE INCLUDES, BUT IS NOT LIMITED TO THE CLEANING, CORRECTION, MODIFICATION, REMOVAL, REPAIR OR RENOVATION OF THE INTERIOR BUILDING ITEM(S) ALTERED, COATED, COVERED OR DAMAGED BY SUCH SPILLAGE OR RESIDUE.

THIS COVERAGE IS LIMITED TO INTERIOR BUILDING ITEMS. WE DO NOT COVER ANY ITEM LOCATED OUTSIDE THE EXTERIOR WALLS OF THE BUILDING OR BELOW THE UNDERSURFACE OF THE LOWEST BASEMENT FLOOR OR, WHERE THERE IS NO BASEMENT, BELOW THE SURFACE OF THE GROUND INSIDE THE FOUNDATION WALLS.

WE WILL NOT PAY FOR SPILLAGE OR RESIDUE REMOVAL IF THE SPILLAGE OR RESIDUE WAS CAUSED BY A PERIL EXCLUDED OR LIMITED BY THIS POLICY. HOWEVER COVERAGE EXCEPTION C. 7.e. UNDER **SECTION I - COVERAGE A. DWELLING** and **COVERAGE B - OTHER STRUCTURES** PERILS INSURED AGAINST DOES NOT APPLY TO THIS ADDITIONAL COVERAGE.

This coverage is additional coverage.

## SECTION I - PERILS INSURED AGAINST

COVERAGE A DWELLING AND - COVERAGE B OTHER STRUCTURES

We insure against risks of direct physical loss to property described in **COVERAGE A and B, EXCEPT:**

A. WE DO NOT COVER ANY LOSS THAT RESULTS FROM A PERIL EXCLUDED OR LIMITED BY THIS POLICY, EVEN IF A COVERED PERIL IS A CONCURRENT CAUSE OF LOSS.

B. WE DO NOT COVER ANY LOSS OR DAMAGE TO YOUR DWELLING OR OTHER STRUCTURES CAUSED DIRECTLY OR INDIRECTLY, CONTRIBUTED TO, OR AGGRAVATED BY DEFECTIVE, INADEQUATE, OR FAULTY PLANNING, CONSTRUCTION, OR MAINTENANCE OF ANY PROPERTY WHETHER ON OR OFF THE **insured location** RESULTING FROM:

DEFECTIVE, INADEQUATE, OR FAULTY:

1. DEVELOPMENT, SUBDIVIDING, SURVEYING, OR SITING; INCLUDING GRADING, EXCAVATION, AND SOIL COMPACTION;

2. SPECIFICATIONS, BUILDING CODES OR THEIR ENFORCEMENT OR ZONING REQUIREMENTS;

3. ALTERATION, CONSTRUCTION, REPAIRS, RENOVATION, OR REMODELING;

4. MATERIALS RECOMMENDED, SELECTED, SUPPLIED, OR USED IN ALTERATION, CONSTRUCTION, REPAIRS, RENOVATION OR REMODELING;

5. MAINTENANCE.

YOU MAY NOT CLAIM ANY OF THE SITUATIONS INCLUDED IN "B." ABOVE AS A CAUSE OF LOSS. THESE ARE NOT PERILS WE INSURE AGAINST. Ensuing perils, NOT OTHERWISE EXCLUDED OR LIMITED BY THIS POLICY are covered.

C. WE DO NOT COVER:

1. LOSSES EXCLUDED UNDER **SECTION I - EXCLUSIONS.**

2. LOSS CAUSED BY FREEZING OF A PLUMBING, DRAINAGE, HEATING, AIR

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 25 of 41 PageID #: 28

CONDITIONING SYSTEM OR AUTOMATIC FIRE PROTECTIVE SPRINKLER SYSTEM OR OF A HOUSEHOLD APPLIANCE, OR BY DISCHARGE, LEAKAGE OR OVERFLOW FROM WITHIN THE SYSTEM OR APPLIANCE CAUSED BY FREEZING. THIS EXCLUSION APPLIES ONLY WHILE THE DWELLING IS VACANT, UNOCCUPIED OR BEING CONSTRUCTED UNLESS YOU HAVE USED REASONABLE CARE TO:

a. MAINTAIN HEAT IN THE BUILDING, OR

b. SHUT OFF THE WATER SUPPLY AND DRAIN THE SYSTEM AND APPLIANCES OF WATER.

3. LOSS CAUSED BY FREEZING, THAWING, PRESSURE OR WEIGHT OF WATER, SNOW OR ICE, WHETHER DRIVEN BY WIND OR NOT TO A:

a. FENCE, DRIVEWAY, ROADWAY, WALKWAY, PAVEMENT, PATIO, SWIMMING POOL, SPA, OR HOT TUB;

b. FOUNDATION, RETAINING WALL, BULKHEAD; OR

c. PIER, DECK, WHARF OR DOCK

4. LOSS CAUSED BY THEFT IN OR TO A DWELLING UNDER CONSTRUCTION, OR OF MATERIALS AND SUPPLIES FOR USE IN THE CONSTRUCTION UNTIL THE DWELLING IS COMPLETED AND OCCUPIED;

5. LOSS CAUSED BY VANDALISM AND MALICIOUS MISCHIEF OR BREAKAGE OF GLASS AND SAFETY GLAZING MATERIALS IF THE DWELLING HAS BEEN VACANT FOR MORE THAN 30 CONSECUTIVE DAYS IMMEDIATELY BEFORE THE LOSS. A DWELLING BEING CONSTRUCTED IS NOT CONSIDERED VACANT;

6. CONTINUOUS OR REPEATED SEEPAGE OR LEAKAGE OF WATER OR STEAM OVER A PERIOD OF TIME, WEEKS, MONTHS OR YEARS, FROM WITHIN A PLUMBING, DRAINAGE, HEATING, AIR CONDITIONING SYSTEM OR AUTOMATIC FIRE PROTECTIVE SPRINKLER SYSTEM OR FROM WITHIN A HOUSEHOLD APPLIANCE;

7. LOSS CAUSED BY:

a. WEAR AND TEAR, MARRING, DETERIORATION, OR FAILURE TO MAINTAIN;

b. INHERENT VICE, LATENT DEFECT, MECHANICAL BREAKDOWN;

c. SMOG, RUST OR OTHER CORROSION, MOLD, FUNGUS, WET OR DRY ROT;

d. SMOKE FROM AGRICULTURAL SMUDGING OR INDUSTRIAL OPERATIONS;

e. DISCHARGE, DISPERSAL, SEEPAGE, MIGRATION, RELEASE OR ESCAPE OF POLLUTANTS UNLESS THE DISCHARGE, DISPERSAL, SEEPAGE, MIGRATION, RELEASE OR ESCAPE IS ITSELF CAUSED BY A PERIL INSURED AGAINST UNDER COVERAGE C OF THIS POLICY. POLLUTANTS MEANS ANY SOLID, LIQUID, GASEOUS, OR THERMAL IRRITANT OR CONTAMINANT, INCLUDING SMOKE, VAPOR, SOOT, FUMES, ACIDS, ALKALIS, CHEMICALS AND WASTE. WASTE INCLUDES MATERIALS TO BE RECYCLED, RECONDITIONED OR RECLAIMED EXCEPT AS PROVIDED BY **SECTION I - ADDITIONAL COVERAGE 12: Spillage or Residue Removal Coverage;**

f. SETTLING, CRACKING, SHRINKING, BULGING OR EXPANSION OF DRIVEWAYS, ROADWAYS, WALKWAYS, PAVEMENTS, PATIOS, FOUNDATIONS, WALLS, FLOORS, ROOFS OR CEILINGS;

g. BIRDS, VERMIN, RODENTS OR INSECTS; OR

h. ANIMALS OWNED OR KEPT BY ANY INSURED.

If any of these cause water to suddenly escape from a plumbing, heating, air conditioning system or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. HOWEVER, "TEARING OUT" DOES NOT INCLUDE ANY DIGGING OR EXCAVATION FOR THE EXAMINATION OF UNDERGROUND DRAINS, FLUES, PIPES, TANKS OR WIRING, EXCEPT AS PROVIDED BY **SECTION I - ADDITIONAL COVERAGES - 11. Excavation Coverage.** WE DO NOT COVER LOSS TO THE SYSTEM OR APPLIANCE FROM WHICH THIS WATER ESCAPED.

8. LOSS CAUSED BY COLLAPSE OTHER THAN PROVIDED AS **ADDITIONAL COVERAGE 8.**

**UNDER ITEMS B. AND C. 2 THROUGH 7 ANY ENSUING LOSS NOT EXCLUDED IS COVERED.**

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 26 of 41 PageID #: 29

## COVERAGE C PERSONAL - PROPERTY

We insure for direct physical loss to property described in Coverage C caused only by the perils named below, unless excepted or excluded by **SECTION I EXCLUSIONS**:

1. **Fire or lightning**.

2. **Windstorm or hail**.

   THIS PERIL DOES NOT INCLUDE LOSS TO THE PROPERTY CONTAINED IN A BUILDING BY RAIN, SNOW, SLEET, SAND OR DUST UNLESS THE DIRECT FORCE OF WIND OR HAIL DAMAGES THE BUILDING CAUSING AN OPENING IN A ROOF OR WALL AND THE RAIN, SNOW, SLEET, SAND OR DUST ENTERS THROUGH THIS OPENING.

   THIS PERIL INCLUDES LOSS TO WATERCRAFT AND THEIR TRAILERS, FURNISHINGS, EQUIPMENT, AND OUTBOARD ENGINES OR MOTORS, ONLY WHILE INSIDE A FULLY ENCLOSED BUILDING.

3. **Explosion**.

4. **Riot or civil commotion**.

5. **Aircraft**, including self-propelled missiles and spacecraft.

6. **Vehicles**.

7. **Smoke**, meaning sudden and accidental damage from smoke.

   THIS PERIL DOES NOT INCLUDE LOSS CAUSED BY SMOKE FROM AGRICULTURAL SMUDGING OR INDUSTRIAL OPERATIONS.

8. **Vandalism or malicious mischief**.

9. **Theft**, including attempted theft and loss of property from a known location when it is likely that the property has been stolen.

   THIS PERIL DOES NOT INCLUDE LOSS CAUSED BY THEFT:

   a. COMMITTED BY ANY **INSURED**, OR ANY PERSON RENTING THE **RESIDENCE PREMISES**;

   b. IN OR TO A DWELLING UNDER CONSTRUCTION, OR OF MATERIALS AND SUPPLIES FOR USE IN THE CONSTRUCTION UNTIL THE DWELLING IS COMPLETED AND OCCUPIED: OR

   c. FROM ANY PART OF A **RESIDENCE PREMISES** RENTED FOR MORE THAN 60 DAYS ANNUALLY BY AN INSURED TO OTHER THAN AN **INSURED**.

THIS PERIL DOES NOT INCLUDE LOSS CAUSED BY THEFT THAT OCCURS AWAY FROM THE **RESIDENCE PREMISES** OF:

a. PROPERTY WHILE AT ANY OTHER RESIDENCE OWNED, RENTED TO, OR OCCUPIED BY ANY **INSURED**, EXCEPT WHILE ANY **INSURED** IS TEMPORARILY RESIDING THERE. PROPERTY OF A STUDENT WHO IS AN **INSURED** IS COVERED WHILE AT A RESIDENCE AWAY FROM HOME IF THE STUDENT HAS BEEN THERE AT ANY TIME DURING THE 45 DAYS IMMEDIATELY BEFORE THE LOSS;

b. WATERCRAFT, INCLUDING THEIR FURNISHINGS, EQUIPMENT AND OUTBOARD ENGINES OR MOTORS; OR

c. TRAILERS AND CAMPERS.

10. **Falling Objects**

    THIS PERIL DOES NOT INCLUDE LOSS TO PROPERTY CONTAINED IN A BUILDING UNLESS THE ROOF OR AN OUTSIDE WALL OF THE BUILDING IS FIRST DAMAGED BY A FALLING OBJECT. DAMAGE TO THE FALLING OBJECT ITSELF IS NOT INCLUDED.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, drainage, heating, automatic fire protective sprinkler system or air conditioning system or from within a household appliance.

    THIS PERIL DOES NOT INCLUDE LOSS:

    a. TO THE SYSTEM OR APPLIANCE FROM WHICH THE WATER OR STEAM ESCAPED;

    b. CAUSED BY OR RESULTING FROM FREEZING, except AS PROVIDED IN THE PERIL FREEZING (14. **FREEZING**) BELOW; OR

    c. ON THE **RESIDENCE PREMISES** CAUSED BY ACCIDENTAL DISCHARGE OR OVERFLOW WHICH OCCURS OFF THE **RESIDENCE PREMISES**.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system or an appliance for heating water.

    WE DO NOT COVER LOSS CAUSED BY OR RESULTING FROM FREEZING UNDER THIS PERIL.

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 27 of 41 PageID #: 30

14. **Freezing** of a plumbing, drainage, heating, automatic fire protective sprinkler system or air conditioning system or of a household appliance. THIS PERIL DOES NOT INCLUDE LOSS ON THE **RESIDENCE PREMISES** WHILE THE DWELLING IS UNOCCUPIED, UNLESS YOU HAVE USED REASONABLE CARE TO:

a. MAINTAIN HEAT IN THE BUILDING: OR

b. SHUT OFF THE WATER SUPPLY AND DRAIN THE SYSTEM AND APPLIANCES OF WATER.

15. **Sudden and accidental damage from artificially generated electrical current.** THIS PERIL DOES NOT INCLUDE LOSS TO A TUBE, TRANSISTOR OR SIMILAR ELECTRONIC COMPONENT.

## SECTION I - EXCLUSIONS

WE DO NOT COVER LOSS RESULTING DIRECTLY OR INDIRECTLY FROM:

1. **ORDINANCE OR LAW**, MEANING ESTABLISHING, ENFORCEMENT OF, OR THE FAILURE TO ESTABLISH OR ENFORCE ANY ORDINANCE, REGULATION OR LAW REGULATING THE CONSTRUCTION, REPAIR, DEMOLITION OR ZONING OF A BUILDING OR OTHER STRUCTURE, UNLESS SPECIFICALLY PROVIDED UNDER THIS POLICY.

2. **EARTH MOVEMENT**, MEANING ANY LOSS CAUSED BY, RESULTING FROM, CONTRIBUTED TO, OR AGGRAVATED BY EVENTS THAT INCLUDE, BUT ARE NOT LIMITED TO THE FOLLOWING:

   a. EARTHQUAKE AND EARTHQUAKE AFTERSHOCKS

   b. VOLCANO ACTIVITY INCLUDING BUT NOT LIMITED TO:

      1. VOLCANIC ERUPTION;

      2. VOLCANIC EXPLOSION;

      3. EFFUSION OF VOLCANIC MATERIAL; OR

      4. LAVA FLOW;

   c. MUDSLIDE INCLUDING, MUDFLOW, DEBRIS FLOW, LANDSLIDE, AVALANCHE, OR SEDIMENT;

   d. SINKHOLE;

   e. SUBSIDENCE;

   f. EXCAVATION COLLAPSE;

   g. EROSION;

   h. ANY EXPANSION, SHIFTING, RISING, SINKING, CONTRACTING, OR SETTLING OF THE EARTH, SOIL, OR LAND.

   THIS EXCLUSION APPLIES WHETHER OR NOT THE EARTH, SOIL, OR LAND IS COMBINED OR MIXED WITH WATER OR ANY OTHER LIQUID OR MATERIAL NATURAL OR MAN-MADE.

However, loss caused directly by the specific perils:

a. fire;

b. explosion;

c. breakage of building or dwelling glass or safety glazing material, including storm doors or windows; or;

d. theft,

following any **EARTH MOVEMENT** is covered.

3. **WATER DAMAGE**, MEANING:

   a. FLOOD, SURFACE WATER, WAVES, WAVE WASH, TIDAL WATER, OVERFLOW OF A BODY OF WATER, OR SPRAY FROM ANY OF THESE, WHETHER OR NOT A RESULT OF PRECIPITATION; OR DRIVEN BY WIND;

   b. WATER

      (1) WHICH BACKS UP THROUGH SEWERS AND DRAINS;

      (2) WHICH OVERFLOWS FROM A SUMP; OR

   c. WATER BELOW THE SURFACE OF THE GROUND, INCLUDING WATER:

      (1) WHICH EXERTS PRESSURE ON, OR SEEPS OR LEAKS THROUGH A BUILDING, DRIVEWAY, ROADWAY, WALKWAY, PAVEMENT, FOUNDATION, SPA, HOT TUB, SWIMMING POOL OR OTHER STRUCTURE;

      (2) WHICH CAUSES EARTH MOVEMENT.

   ALL LOSS FROM **WATER DAMAGE** IS EXCLUDED NO MATTER IF LOSS OR DAMAGE WAS CAUSED BY, OR AGGRAVATED BY ANY OTHER PERIL IN ANY SEQUENCE. However, direct loss by fire, explosion or theft resulting from **WATER DAMAGE** will be covered.

4. **POWER FAILURE**, MEANING THE FAILURE OF POWER OR OTHER UTILITY SERVICE IF THE FAILURE TAKES PLACE OFF THE **RESIDENCE PREMISES**. IF A PERIL INSURED AGAINST

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 28 of 41 PageID #: 31

ENSUES ON THE **RESIDENCE PREMISES**, WE WILL PAY ONLY FOR LOSS CAUSED BY THE ENSUING PERIL.

5. **NEGLECT**, MEANING NEGLECT OF THE **INSURED** TO USE ALL REASONABLE MEANS TO SAVE AND PRESERVE PROPERTY AT AND AFTER THE TIME OF A LOSS, OR WHEN PROPERTY IS ENDANGERED BY A PERIL INSURED AGAINST.

6. **WAR**, INCLUDING UNDECLARED WAR, CIVIL WAR, INSURRECTION, REBELLION, REVOLUTION, WARLIKE ACT BY A MILITARY FORCE OR MILITARY PERSONNEL, DESTRUCTION OR SEIZURE OR USE FOR A MILITARY PURPOSE, AND INCLUDING ANY CONSEQUENCE OF ANY OF THESE. DISCHARGE OF A NUCLEAR WEAPON SHALL BE DEEMED A WARLIKE ACT EVEN IF ACCIDENTAL.

7. **NUCLEAR HAZARD**, TO THE EXTENT SET FORTH IN THE NUCLEAR HAZARD CLAUSE OF SECTION I - CONDITIONS.

8. **INTENTIONAL LOSS**, MEANING ANY LOSS ARISING OUT OF ANY ACT COMMITTED:

    (1) BY OR AT THE DIRECTION OF AN **INSURED**; and

    (2) WITH THE INTENT TO CAUSE A LOSS.

LOSS OR DAMAGE EXCLUSIONS 1-8 APPLY ABOVE EVEN IF A COVERED PERIL IS A CONCURRENT CAUSE OF LOSS. Ensuing loss specifically accepted by the terms of this policy is covered.

---

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, WE SHALL NOT BE LIABLE:

    a. TO THE **INSURED** FOR AN AMOUNT GREATER THAN THE **INSURED'S** INTEREST; nor

    b. FOR MORE THAN THE APPLICABLE LIMIT OF LIABILITY.

2. **Your Duties After Loss.** In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

    a. GIVE IMMEDIATE OR AS SWIFT AS POSSIBLE NOTICE TO US OR OUR/YOUR AGENT;

    b. IN ADDITION, GIVE IMMEDIATE OR AS SWIFT AS POSSIBLE, A REPORT TO THE POLICE, IF THE LOSS IS THEFT;

    c. NOTIFY THE CREDIT CARD COMPANY OR FUND TRANSFER CARD COMPANY IN THE CASE OF LOSS UNDER **ADDITIONAL COVERAGE - 6.** CREDIT CARD, FUND TRANSFER CARD COVERAGE;

    d. (1) PROTECT THE PROPERTY FROM FURTHER DAMAGE;

    (2) MAKE REASONABLE AND NECESSARY REPAIRS TO PROTECT THE PROPERTY; AND

    (3) KEEP AN ACCURATE RECORD OF REPAIR EXPENDITURES;

    e. PREPARE AN INVENTORY OF DAMAGED PERSONAL PROPERTY SHOWING IN DETAIL THE:

    (1) QUANTITY;

    (2) DESCRIPTION;

    (3) ACTUAL CASH VALUE; AND

    (4) AMOUNT OF LOSS.

    ATTACH TO THE INVENTORY ALL:

    (1) BILLS;

    (2) RECEIPTS; AND

    (3) RELATED DOCUMENTS THAT SUBSTANTIATE THE FIGURES IN THE INVENTORY;

    f. AS OFTEN AS WE REASONABLY REQUIRE:

    (1) SHOW THE DAMAGED PROPERTY;

    (2) PROVIDE US WITH RECORDS AND DOCUMENTS AND PERMIT US TO MAKE COPIES; AND

    (3) SUBMIT TO EXAMINATION UNDER OATH, WHILE NOT IN THE PRESENCE OF ANY OTHER **INSURED** AND SIGN THE SAME;

    g. SUBMIT TO US, WITHIN 60 DAYS AFTER WE REQUEST, YOUR SIGNED, SWORN STATEMENT OF LOSS WHICH SETS FORTH, TO THE BEST OF YOUR KNOWLEDGE AND BELIEF:

    (1) THE TIME AND CAUSE OF LOSS;

    (2) INTEREST OF THE **INSURED** AND ALL OTHERS IN THE PROPERTY INVOLVED AND ALL ENCUMBRANCES ON THE PROPERTY;

    (3) OTHER INSURANCE WHICH MAY COVER THE LOSS;

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 29 of 41 PageID #: 32

(4) CHANGES IN TITLE OR OCCUPANCY OF THE PROPERTY DURING THE TERM OF THE POLICY;

(5) SPECIFICATIONS OF ANY DAMAGED BUILDING AND DETAILED ESTIMATES FOR REPAIR OF THE DAMAGE;

(6) AN INVENTORY OF DAMAGED PERSONAL PROPERTY DESCRIBED IN 2e. ABOVE;

(7) RECEIPTS FOR ADDITIONAL LIVING EXPENSES INCURRED AND RECORDS SUPPORTING THE FAIR RENTAL VALUE LOSS;

(8) EVIDENCE OR AFFIDAVIT SUPPORTING A CLAIM UNDER THE CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY COVERAGE, STATING THE AMOUNT AND CAUSE OF LOSS.

3. **Loss Settlement.** Covered property losses are settled as follows:

a. PERSONAL PROPERTY AND STRUCTURES THAT ARE NOT BUILDINGS AT ACTUAL CASH VALUE AT THE TIME OF LOSS, BUT NOT EXCEEDING THE AMOUNT NECESSARY TO REPAIR OR REPLACE;

b. CARPETING, DOMESTIC APPLIANCES, AWNINGS, OUTDOOR ANTENNAS AND OUTDOOR EQUIPMENT, WHETHER OR NOT ATTACHED TO BUILDINGS, AT ACTUAL CASH VALUE AT THE TIME OF LOSS BUT NOT EXCEEDING THE AMOUNT NECESSARY TO REPAIR OR REPLACE;

c. BUILDINGS UNDER COVERAGE A OR B AT REPLACEMENT COST WITHOUT DEDUCTION FOR DEPRECIATION, SUBJECT TO THE FOLLOWING:

(1) IF AT THE TIME OF LOSS THE AMOUNT OF INSURANCE IN THIS POLICY ON THE DAMAGED BUILDING IS 80% OR MORE OF THE FULL REPLACEMENT COST OF THE BUILDING IMMEDIATELY PRIOR TO THE LOSS, WE WILL PAY THE COST OF REPAIR OR REPLACEMENT, WITHOUT DEDUCTION FOR DEPRECIATION, BUT NOT EXCEEDING THE SMALLEST OF THE FOLLOWING AMOUNTS:

(a) THE LIMIT OF LIABILITY UNDER THIS POLICY APPLYING TO THE BUILDING;

(b) THE REPLACEMENT COST OF THAT PART OF THE BUILDING DAMAGED FOR EQUIVALENT CONSTRUCTION AND USE ON THE SAME PREMISES; OR

(c) THE AMOUNT ACTUALLY AND NECESSARILY SPENT TO REPAIR OR REPLACE THE DAMAGED BUILDING.

(2) IF AT THE TIME OF LOSS THE AMOUNT OF INSURANCE IN THIS POLICY ON THE DAMAGED BUILDING IS LESS THAN 80% OF THE FULL REPLACEMENT COST OF THE BUILDING IMMEDIATELY PRIOR TO THE LOSS, WE WILL PAY THE LARGER OF THE FOLLOWING AMOUNTS, BUT NOT EXCEEDING THE LIMIT OF LIABILITY UNDER THIS POLICY APPLYING TO THE BUILDING;

(a) THE ACTUAL CASH VALUE OF THAT PART OF THE BUILDING DAMAGED; OR

(b) THAT PROPORTION OF THE COST TO REPAIR OR REPLACE, WITHOUT DEDUCTION FOR DEPRECIATION, OF THAT PART OF THE BUILDING DAMAGED, WHICH THE TOTAL AMOUNT OF INSURANCE IN THIS POLICY ON THE DAMAGED BUILDING BEARS TO 80% OF THE REPLACEMENT COST OF THE BUILDING.

(3) IN DETERMINING THE AMOUNT OF INSURANCE REQUIRED TO EQUAL 80% OF THE FULL REPLACEMENT COST OF THE BUILDING IMMEDIATELY PRIOR TO THE LOSS, YOU SHALL DISREGARD THE VALUE OF EXCAVATIONS, FOUNDATIONS, PIERS AND OTHER SUPPORTS WHICH ARE BELOW THE UNDERSURFACE OF THE LOWEST BASEMENT FLOOR OR, WHERE THERE IS NO BASEMENT, WHICH ARE BELOW THE SURFACE OF THE GROUND INSIDE THE FOUNDATION WALLS, AND UNDERGROUND FLUES, PIPES, WIRING AND DRAINS.

(4) WE WILL PAY NO MORE THAN THE ACTUAL CASH VALUE OF THE DAMAGE UNTIL ACTUAL REPAIR OR REPLACEMENT IS COMPLETE. ONCE ACTUAL REPAIR IS COMPLETE, we will settle the loss according to the provisions of c.(1) and c.(2) above. However,

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 30 of 41 PageID #: 33

IF THE COST TO REPAIR OR RE-PLACE IS LESS THAN $1,000 we will settle the loss ACCORDING TO THE PROVISIONS OF c. (1) and c. (2) above, whether or not actual repair or replacement is complete.

    (5) YOU MAY DISREGARD THE RE-PLACEMENT COST LOSS SETTLE-MENT PROVISIONS AND MAKE CLAIM UNDER THIS POLICY FOR LOSS OR DAMAGE TO BUILDINGS ON AN AC-TUAL CASH VALUE BASIS AND THEN MAKE CLAIM WITHIN 180 DAYS AF-TER LOSS FOR ANY ADDITIONAL LI-ABILITY ON A REPLACEMENT COST BASIS.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

    a. REPAIR OR REPLACE ANY PART TO RE-STORE THE PAIR OR SET TO ITS VALUE BEFORE THE LOSS; OR

    b. PAY THE DIFFERENCE BETWEEN AC-TUAL CASH VALUE OF THE PROPERTY BEFORE AND AFTER THE LOSS.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to se-lect an umpire. The appraisers shall then set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the ap-praisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each ap-praiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, WE WILL PAY ONLY THE PROPORTION OF THE LOSS THAT THE LIMIT OF LIABILITY THAT APPLIES UNDER THIS POLICY BEARS TO THE TOTAL AMOUNT OF INSURANCE COVERING THE LOSS.

8. **Suit Against** Us. No action shall be brought UN-LESS THERE HAS BEEN COMPLIANCE WITH THE POLICY PROVISIONS AND THE ACTION IS STARTED WITHIN ONE YEAR AFTER THE OCCURRENCE CAUSING LOSS OR DAMAGE.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn statement of loss, we may repair or replace any part of the property damaged with equivalent property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you UNLESS SOME OTHER PER-SON NAMED IN THE POLICY IS LEGALLY EN-TITLED TO RECEIVE PAYMENT. Loss will be payable 60 days after we receive your proof of loss and;

    a. Reach agreement with you; or

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by any **insured**.

12. **Mortgage Clause.** The word "mortgagee" in-cludes trustee. If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as inter-ests appear. If more than one mortgagee is named, the order of payment shall be the same as the order or precedence of the mortgages. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

    a. notifies us of any change in ownership, occu-pancy or substantial change in risk of which the mortgagee is aware;

    b. pays any premium due under this policy on demand if you have neglected to pay the premium;

    c. submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions re-lating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date of cancellation or nonrenewal takes place.

If we pay the mortgagee for any loss and deny payment to you:

    a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

Case 3:14-cv-01288  Document 1-1  Filed 06/12/14  Page 31 of 41 PageID #: 34

b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

   a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   b. LOSS CAUSED BY THE NUCLEAR HAZARD SHALL NOT BE CONSIDERED LOSS CAUSED BY FIRE, EXPLOSION, OR SMOKE, WHETHER THESE PERILS ARE SPECIFICALLY NAMED IN OR OTHERWISE INCLUDED WITHIN THE PERILS INSURED AGAINST IN SECTION I.

   c. THIS POLICY DOES NOT APPLY UNDER SECTION I TO LOSS CAUSED DIRECTLY OR INDIRECTLY BY NUCLEAR HAZARD, EXCEPT THAT DIRECT LOSS BY FIRE RESULTING FROM THE NUCLEAR HAZARD IS COVERED.

15. **Inflation Protection Coverage**

   a. During the term of this policy, we will increase the limit of liability for Coverage A monthly at the rate of 1/12 of the annual residential building cost percentage change factors as determined by our cost calculation method which is based on a nationally recognized construction cost index.

   b. The limit of liability shown on the Declarations Page for Coverage A will be revised yearly at each renewal to reflect any changes in building costs during the policy period as determined in paragraph 1 above. Any adjustment in premium resulting from this change will be made on the basis of rates in use by us at the time the change is made. You have the right to refuse this change prior to the renewal date by contacting your agent or us.

16. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

---

## SECTION II - LIABILITY COVERAGES

### COVERAGE E - PERSONAL LIABILITY

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, even if the claim or suit is false, we will:

a. Pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured**; and

b. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

### COVERAGE F-MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except **residence employees**. As to others, this coverage applies only:

a. to a person on the **insured location** with the permission of any **insured**; or

b. to a person off the **insured location**, if the **bodily injury**:

   (1) arises out of a condition on the **insured location** or the ways immediately adjoining;

   (2) is caused by the activities of any **insured**;

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 32 of 41 PageID #: 35

(3) is caused by a **residence employee** in the course of the **residence employee's** employment by any **insured**; or

(4) is caused by an animal owned by or in the care of any **insured**.

---

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to **bodily injury** or **property damage:**

   a. which is expected or intended by any **insured;**

   b. Arising out of or in connection with a **business** engaged in by any **insured.** This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstances involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the **business;**

   NOTE: The furnishing of home day care services for

   (1) a fee, or

   (2) other compensation

   by the insured and the rendering of such services two or more days per week for a period of two or more hours per day constitutes one type of many different business pursuits.

   c. Arising out of the rental or holding for rental of any premises by any **insured.** This exclusion does not apply to the rental or holding for rental of an **insured location:**

   (1) on an occasional basis if used only as a residence.

   (2) in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

   (3) in part, as an office, school, studio or private garage;

   d. arising out of the rendering or failing to render professional services;

   e. arising out of a premise:

   (1) owned by any **insured;**

   (2) rented to any **insured;** or

   (3) rented to others by any **insured;**

   that is not an **insured location;**

   f. arising out of:

   (1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to any **insured;**

   (2) the entrustment by any **insured** of a motor vehicle or any other motorized land conveyance to any person; or

   (3) vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

   This exclusion does not apply to:

   (1) a trailer not towed by or carried on a motorized land conveyance.

   (2) a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

   (a) not owned by any **insured;** or

   (b) owned by any **insured** and on an **insured** location.

   (3) a motorized golf cart when used to play golf on a golf course.

   (4) a vehicle or conveyance not subject to motor vehicle registration which is:

   (a) used to service any **insured's** residence;

   (b) designed for assisting the handicapped; or

   (c) in dead storage on an **insured location.**

   g. arising out of:

   (1) the ownership, maintenance, use, loading or unloading of watercraft described below;

   (2) the entrustment by any **insured** of a watercraft described below to any person; or

   (3) vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

   Excluded watercraft are those that are principally designed to be propelled by engine power, jet power or electric motor, or are sailing vessels, whether owned by or rented to any insured. This exclusion does not apply to watercraft:

   (1) that are not sailing vessels and are powered by:

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 33 of 41 PageID #: 36

(a) inboard or inboard-out drive engine or motor power of 50 horsepower or less not owned by any **insured**;

(b) inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to any **insured**;

(c) one or more outboard engines or motors with 25 total horsepower or less;

(d) one or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by any **insured**;

(e) outboard engines or motors of more than 25 total horsepower owned by any **insured** if:

(i) you acquire them prior to the policy period; and

(a) you declare them at policy inception;

(b) your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors.

(ii) you acquire them during the policy period.

This coverage applies for the policy period.

(2) that are sailing vessels, with or without auxiliary power:

(a) less than 26 feet in overall length;

(b) 26 feet or more in overall length not owned by or rented to any insured.

(3) that are stored;

h. rising out of:

(1) the ownership, maintenance, use, loading or unloading of any **aircraft**;

(2) the entrustment by any **insured** of an **aircraft** to any person; or

(3) vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an **aircraft**.

Exclusions e, f, g and h do not apply to **bodily injury** to any **residence employee** arising

out of and in the course of the **residence employee's** employment by any **insured**.

i. caused directly or indirectly by war, including the following and any consequence of any of the following:

(1) undeclared war, civil war, insurrection, rebellion or revolution;

(2) warlike act by military force or military personnel; or

(3) destructive seizure or use for a military purpose. Discharge of a nuclear weapon will be deemed a war-like act even if accidental;

j. which arises out of the transmission of a communicable disease by any **insured**.

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. arising out of the use, sale, manufacture, delivery, transfer or possession by any person of any Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

2. **Coverage E - Personal Liability**, does not apply to:

a. Liability:

(1) for any loss assessment charged against you as a member of an association, corporation or community of property owners;

(2) under any contract or agreement. However, this exclusion does not apply to written contracts:

(a) that directly relate to the ownership, maintenance or use of an **insured location**; or

(b) where the liability of others is assumed by the **insured** prior to an **occurrence**;

unless excluded in (1) above or elsewhere in this policy;

b. **property damage** to property owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion does not apply to

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 34 of 41 PageID #: 37

property damage caused by fire, smoke or explosion;

d. **bodily injury** to any person eligible to receive any benefits:

    (1) voluntarily provided; or

    (2) required to be provided;

  by the **insured** under any:

    (1) workers' compensation law;

    (2) non-occupational disability law; or

    (3) occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy:

    (1) is also an insured under a nuclear energy liability policy; or

    (2) would be an insured under that policy but for the exhaustion of its limit of liability.

  A nuclear energy liability policy is a one issued by:

    (1) American Nuclear Insurers;

    (2) Mutual Atomic Energy Liability Underwriters;

    (3) Nuclear Insurance Association of Canada;

  or any of their successors; or

f. **bodily injury** to any person who is related by blood, marriage, or adoption to a covered person and who is a resident of the household of that person; or **bodily injury** to you.

3. **Coverage F - Medical Payments to Others**, does not apply to **bodily injury**:

a. to a **residence employee** if the **bodily injury**:

    (1) occurs off the **insured location**; and

    (2) does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b. to any person eligible to receive benefits:

    (1) voluntarily provided; or

    (2) required to be provided;

  under any:

    (1) workers' compensation law;

    (2) non-occupational disability law; or

    (3) occupational disease law;

c. from any:

    (1) nuclear reaction;

    (2) nuclear radiation; or

    (3) radioactive contamination;

  all whether controlled or uncontrolled or however caused; or

    (4) any consequence of any of these.

d. to any person, other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

---

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses**. We pay:

a. expenses incurred by us and costs taxed against any **insured** in any suit we defend;

b. premiums on bonds required in a suit defended by us, but not for bond amounts greater than the limit of liability for Coverage E. We are not obligated to apply for or furnish any bond;

c. reasonable expenses incurred by any **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day for assisting us in the investigation or defense of any claim or suit;

d. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses**. We will pay expenses for first aid to others incurred by any **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others**. We will pay at replacement cost, up to $500 per **occurrence** for **property damage** to property of others caused by any **insured**. **We will not pay for property damage**:

a. to the extent of any amount recoverable under Section I of this policy;

b. caused intentionally by any **insured** who is 13 years of age or older;

c. to property owned by any **insured**;

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 35 of 41 PageID #: 38

d. to property owned by or rented to a tenant of any **insured**, or a resident in your household; or

e. arising out of:

   (1) a **business** engaged in by any **insured**;

   (2) any act or omission in connection with a premises owned, rented or controlled by any **insured**, other than the **insured location**; or

   (3) the ownership, maintenance, or use of **aircraft**, watercraft, motor vehicles or all other motorized land conveyances.

This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an **insured**.

4. **Loss Assessment**. We will pay up to $1,000 for your share of any loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

a. **bodily injury** or **property damage** not excluded under Section II of this policy; or

b. liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

   (1) the director, officer or trustee is elected by the members of the corporation or association of property owners; and

   (2) the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

a. one accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II - Coverage E Personal Liability Exclusion 2.a.(1);

2. Under Section I & II - Conditions, Condition 1. Policy Period.

---

## SECTION II - CONDITIONS

1. **Limit of Liability**. Our total liability under Coverage E for all damages resulting from any one **occurrence** will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of **insureds**, claims made, or persons injured. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **occurrence**.

Our total liability under Coverage F for all medical expense payable for **bodily injury** to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance**. This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss**. In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You will help us by seeing that these duties are performed:

a. give written notice to us or our agent as soon as is practical, which sets forth:

   (1) the identity of the policy and **insured**;

   (2) reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

   (3) names and addresses of any claimants and witnesses;

b. Promptly forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

c. at our request, help us

   (1) to make settlement;

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 36 of 41 PageID #: 39

(2) to enforce any right of contribution or indemnity against any person or organization who may be liable to any **insured;**

(3) with the conduct of suits and attend hearings and trials;

(4) to secure and give evidence and to obtain the attendance of witnesses;

d. At our option, either:

(1) Submit to us, within 60 days after we request, your signed, sworn statement of loss; or

(2) Submit to an oral examination under oath setting forth to the best of your knowledge and belief:

(a) the time and cause of loss;

(b) a description of the accident or occurrence, and;

(c) any other information we may reasonably require.

e. under this coverage - Damage to the Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if within the **insured's** control;

f. the **insured** will not, except at the **insured's** own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of **bodily injury**.

4. **Duties of an Injured Person - Coverage F - Medical Payments to Others**. The injured person or someone acting for the injured person will:

a. give us written proof of claim, under oath if required, as soon as practical;

b. authorize us to obtain copies of medical reports and records.

The injured person will submit to physical examination by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage F - Medical Payments to Others**. Payment under this coverage is not an admission of liability by any **insured** or us.

6. **Suit Against Us**. No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have any right to join us as a party to any action against any **insured**. Also, no action with respect to Coverage E can be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of any Insured**. Bankruptcy or insolvency of any **insured** shall not relieve us of any of our obligations under this policy.

8. **Other Insurance - Coverage E - Personal Liability**. This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

## SECTION I AND SECTION II - CONDITIONS

1. **POLICY PERIOD.** THIS POLICY APPLIES ONLY TO LOSS UNDER SECTION I OR **BODILY INJURY** OR **PROPERTY DAMAGE** UNDER SECTION II, WHICH OCCURS DURING THE POLICY PERIOD.

YOU MAY CONTINUE THIS POLICY, SUBJECT TO OUR CONSENT, FOR SUCCESSIVE PERIODS BY PAYING REQUIRED PREMIUMS WHEN DUE.

2. **CONCEALMENT OR FRAUD.** THE ENTIRE POLICY WILL BE VOID IF, WHETHER BEFORE OR AFTER A LOSS, ANY **INSURED** HAS:

a. INTENTIONALLY CONCEALED OR MISREPRESENTED ANY MATERIAL FACT OR CIRCUMSTANCE;

b. ENGAGED IN FRAUDULENT CONDUCT; OR

c. MADE FALSE STATEMENTS; RELATING TO THIS INSURANCE.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy WITHOUT ADDITIONAL PREMIUM CHARGE, that change will automatically apply to your insurance as of the date we implement the change in your state PROVIDED THAT THIS DATE FALLS WITHIN 60 DAYS PRIOR TO OR DURING THE POLICY PERIOD STATED IN THE DECLARATIONS. THIS LIBERALIZATION CLAUSE DOES NOT APPLY TO CHANGES IMPLEMENTED THROUGH INTRODUCTION OF A SUBSEQUENT EDITION OF OUR POLICY.

4. **Cancellation**.

Case 3:14-cv-01288  Document 1-1  Filed 06/12/14  Page 37 of 41 PageID #: 40

a. You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect.

b. WE MAY CANCEL THIS POLICY FOR THE REASONS STATED IN THIS CONDITION BY NOTIFYING YOU IN WRITING OF THE DATE CANCELLATION TAKES EFFECT. THIS CANCELLATION NOTICE MAY BE DELIVERED TO YOU, OR MAILED TO YOU AT YOUR MAILING ADDRESS SHOWN IN THE DECLARATIONS. PROOF OF MAILING SHALL BE SUFFICIENT PROOF OF NOTICE.

(1) WHEN YOU HAVE NOT PAID THE PREMIUM, WHETHER PAYABLE TO US OR TO OUR AGENT OR UNDER ANY FINANCE OR CREDIT PLAN, WE MAY CANCEL AT ANY TIME BY NOTIFYING YOU AT LEAST 10 DAYS BEFORE THE DATE CANCELLATION TAKES EFFECT.

(2) WHEN THIS POLICY HAS BEEN IN EFFECT FOR LESS THAN 60 DAYS AND IS NOT A RENEWAL WITH US, WE MAY CANCEL FOR ANY REASON BY NOTIFYING YOU AT LEAST 10 DAYS BEFORE THE DATE CANCELLATION TAKES EFFECT.

(3) WHEN THIS POLICY HAS BEEN IN EFFECT FOR 60 DAYS OR MORE, OR AT ANY TIME IF IT IS A RENEWAL WITH US, WE MAY CANCEL IF THERE HAS BEEN A MATERIAL MISREPRESENTATION OF FACT WHICH IF KNOWN TO US WOULD HAVE CAUSED US NOT TO ISSUE THE POLICY OR IF THE RISK HAS CHANGED SUBSTANTIALLY SINCE THE POLICY WAS ISSUED. THIS CAN BE DONE BY NOTIFYING YOU AT LEAST 30 DAYS BEFORE THE DATE CANCELLATION TAKES EFFECT.

(4) WHEN THIS POLICY IS WRITTEN FOR A PERIOD LONGER THAN ONE YEAR, WE MAY CANCEL FOR ANY REASON AT ANNIVERSARY BY NOTIFYING YOU AT LEAST 30 DAYS BEFORE THE DATE CANCELLATION TAKES EFFECT.

c. WHEN THIS POLICY IS CANCELLED, THE PREMIUM FOR THE PERIOD FROM THE DATE OF CANCELLATION TO THE EXPIRATION DATE WILL BE REFUNDED. WHEN YOU REQUEST CANCELLATION IN THE FIRST POLICY YEAR, THE RETURN PREMIUM WILL BE BASED ON OUR SHORT-RATE TABLE. OTHERWISE, THE RETURN PREMIUM WILL BE PRO RATA.

d. IF THE RETURN PREMIUM IS NOT REFUNDED WITH THE NOTICE OF CANCELLATION OR WHEN THIS POLICY IS RETURNED TO US, WE WILL REFUND IT WITHIN A REASONABLE TIME AFTER THE DATE CANCELLATION TAKES EFFECT.

5. **NON-RENEWAL.** WE MAY ELECT NOT TO RENEW THIS POLICY. WE MAY DO SO BY DELIVERING TO YOU, OR MAILING TO YOU AT YOUR MAILING ADDRESS SHOWN IN THE DECLARATIONS WRITTEN NOTICE AT LEAST 30 DAYS BEFORE THE EXPIRATION DATE OF THIS POLICY. PROOF OF MAILING SHALL BE SUFFICIENT PROOF OF NOTICE.

6. **Assignment.** ASSIGNMENT OF THIS POLICY SHALL NOT BE VALID UNLESS WE GIVE OUR WRITTEN CONSENT.

7. **Subrogation.** Any **insured** may waive in writing before a loss all rights of recovery against any person. IF NOT WAIVED, WE MAY REQUIRE AN ASSIGNMENT OF RIGHTS OF RECOVERY FOR A LOSS TO THE EXTENT THAT PAYMENT IS MADE BY US.

IF AN ASSIGNMENT IS SOUGHT, ANY **INSURED** SHALL SIGN AND DELIVER RELATED PAPERS AND COOPERATE WITH US IN ANY REASONABLE MANNER.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

8. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household dies;

a. we insure the legal representative of the deceased BUT ONLY WITH RESPECT TO THE PREMISES AND PROPERTY OF THE DECEASED COVERED UNDER THE POLICY AT THE TIME OF DEATH;

b. **INSURED** INCLUDES:

(1) ANY MEMBER OF YOUR HOUSEHOLD WHO IS AN **INSURED** AT THE TIME OF YOUR DEATH, BUT ONLY WHILE A RESIDENT OF THE **RESIDENCE PREMISES;** AND

(2) WITH RESPECT TO YOUR PROPERTY, THE PERSON HAVING PROPER TEMPORARY CUSTODY OF THE PROPERTY UNTIL APPOINTMENT AND QUALIFICATION OF A LEGAL REPRESENTATIVE.

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 38 of 41 PageID #: 41

9. **PREMIUM**. THE PREMIUM STATED IN THE DECLARATIONS IS THE INITIAL PREMIUM FOR THIS POLICY. ON EACH RENEWAL, CONTINUATION OR ANNIVERSARY OF THE EFFECTIVE DATE OF THIS POLICY, THE PREMIUM SHALL BE COMPUTED BY US IN ACCORDANCE WITH RULES AND RATES IN EFFECT.

Case 3:14-cv-01288   Document 1-1   Filed 06/12/14   Page 39 of 41 PageID #: 42

This policy is signed for the company which is the insurer under this policy.

James M. Michener
Secretary

Bob Khanna
Chief Executive Officer
Personal Lines

**IN WITNESS WHEREOF, the Company has executed and attested these presents.**

PL-9107 8-97



**HO-3 (06-91)**